UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

TORAN PETERSON,

        Plaintiff,                             Case No. 1:13-cv-903

v.                                                Honorable Gordon J. Quist

DIANE SHAW et al.,

        Defendants.
_____/

## OPINION

        This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis*, and Plaintiff will pay the initial partial filing fee as funds become available.  Under the Prison Litigation Reform Act (PLRA), PUB. L. NO. 104-134, 110 STAT. 1321 (1996), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief.  28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c).  The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible.  *Denton v. Hernandez*, 504 U.S. 25, 33 (1992).  Applying these standards, Plaintiff's action will be dismissed for failure to state a claim and/or because Defendants are immune from suit.

## Factual Allegations

        Plaintiff Toran Peterson is a state prisoner incarcerated by the Michigan Department of Corrections (MDOC) at the Ionia Correctional Facility (ICF).  He sues the MDOC, former

Director of the MDOC Patricia Caruso, MDOC Regional Health Information Manager Diane Shaw, and Acting Manager of the MDOC's Grievance and Appeal's Section, Richard Russell. He also sues the following employees of ICF: Grievance Coordinator (unknown) Breedlove and Administrative Assistant/Deputy Warden Richard Groves. In addition, he sues Willie O. Smith, who was the warden of ICF at the time of the events he complains of in the complaint, but who is now the warden of Carson City Correctional Facility (DRF).

According to the *pro se* complaint, on June 27, 2010, Plaintiff received documents from an attorney representing an MDOC employee. Upon reviewing the documents, Plaintiff learned that Defendant Shaw disclosed 825 pages of his medical records to the attorney, without Plaintiff's consent. Plaintiff claims that the disclosure constituted a violation of his right to privacy and confidentiality under the First and Fourteenth Amendments.

On June 29, 2010, Plaintiff sent a kite to Shaw about the disclosure of his medical records. He never received a response. On July 5, 2010, Plaintiff filed a prisoner grievance regarding Shaw's actions, but he never received a grievance receipt or a response to his grievance. Plaintiff then wrote to Defendant Groves about the issue, but Plaintiff never received a response. Plaintiff also wrote to Defendant Breedlove about the grievance on two occasions, but he never received a response. On August 11, 2010, Plaintiff wrote a letter to Warden Smith complaining that Defendant Breedlove was not processing his grievances. Plaintiff also wrote to Defendants Caruso and other MDOC officials. Plaintiff later received a copy of his grievance along with memos from Defendant Russell, which stated that Plaintiff must file his grievance at his facility. The memos were dated August 17, 2010.

Based on the foregoing, Plaintiff claims that Defendant Breedlove denied him his First Amendment right to file prisoner grievances by failing to process them. In addition,

Defendants Caruso, Russell, Smith, and Groves denied Plaintiff his rights under the First Amendment because they "tacitly/implicitly authorized/approved and knowingly acquiesced in the violation of [Plaintiff's] right to file nonfrivolous grievances."  (Compl., docket #1, Page ID#4.)

As relief for the foregoing, Plaintiff seeks compensatory and punitive damages.

## Discussion

    I.    <u>Immunity</u>

Plaintiff may not maintain a § 1983 action against the MDOC.  Regardless of the form of relief requested, the states and their departments are immune under the Eleventh Amendment from suit in the federal courts, unless the state has waived immunity or Congress has expressly abrogated Eleventh Amendment immunity by statute.  *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98-101 (1984); *Alabama v. Pugh*, 438 U.S. 781, 782 (1978); *O'Hara v. Wigginton*, 24 F.3d 823, 826  (6th Cir. 1993).  Congress has not expressly abrogated Eleventh Amendment immunity by statute, *Quern v. Jordan*, 440 U.S. 332, 341 (1979), and the State of Michigan has not consented to civil rights suits in federal court.  *Abick v. Michigan*, 803 F.2d 874, 877 (6th Cir. 1986).  In numerous unpublished opinions, the Sixth Circuit has specifically held that the MDOC is absolutely immune from suit under the Eleventh Amendment.  *See*, *e.g.*, *McCoy v. Michigan*, 369 F. App'x 646, 653-54 (6th Cir. 2010); *Turnboe v. Stegall*, No. 00-1182, 2000 WL1679478, at *2 (6th Cir. Nov. 1, 2000).  In addition, the State of Michigan (acting through the Michigan Department of Corrections) is not a "person" who may be sued under § 1983 for money damages.  *See Lapides v. Bd. of Regents*, 535 U.S. 613 (2002) (citing *Will v. Mich. Dep't of State Police*, 491 U.S. 58 (1989)).  Therefore, the MDOC will be dismissed.

    II.    <u>Failure to state a claim</u>

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'"  *Bell Atl. Corp.*

*v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting FED. R. CIV. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Dominguez v. Corr. Med. Servs.*, 555 F.3d 543, 549 (6th Cir. 2009). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A. Right to Privacy

Plaintiff claims that the disclosure of his medical records by a MDOC employee to an attorney representing one of the MDOC's employees constituted a violation of his constitutional right to privacy. There is a constitutional right to informational privacy under the Fourteenth Amendment, but the Sixth Circuit has limited that right "'only to interests that implicate a fundamental liberty interest.'" *Wurzelbacher v. Jones–Kelley*, 675 F.3d 580, 586 (6th Cir. 2012) (quoting *Lambert v. Hartman*, 517 F.3d 433, 440 (6th Cir. 2008) (internal quotation marks and citation omitted)). A plaintiff alleging a violation of his informational privacy rights must demonstrate that "'the interest at stake relates to those personal rights that can be deemed fundamental or implicit in the concept of ordered liberty.'" *Id.* (quoting *Bloch v. Ribar*, 156 F.3d 673, 684 (6th Cir. 1998) (internal quotation marks and citation omitted)); *see also Lee v. City of Columbus*, 636 F.3d 245, 260 (6th Cir. 2011); *J.P. v. DeSanti*, 653 F.2d 1080, 1087-91 (6th Cir. 1981).

Applying the foregoing standard, the Sixth Circuit repeatedly has rejected claims asserting a constitutional right to non-disclosure of personal information. *See, e.g., Lee*, 636 F.3d at 261 (city's requirement that employees returning from sick leave disclose the "nature of [their] illness" to their immediate supervisors does not implicate a fundamental right); *Summe v. Kenton Cnty. Clerk's Office*, 604 F.3d 257, 270-71 (6th Cir. 2010) (county's release of medical record of deputy county clerk pursuant to an open records request did not implicate a right fundamental or implicit in the concept of ordered liberty so as to violate constitutional right to privacy); *Barber v. Overton*, 496 F.3d 449, 455-57 (6th Cir. 2007) (release of guards' birth dates and social security numbers to prisoners did not rise to constitutional level); *Coleman v. Martin*, 63 F. App'x 791, 793 (6th Cir. 2003) (dissemination of prisoner's mental health records to parole board was not a

constitutional violation); *Jarvis v. Wellman*, 52 F.3d 125, 126 (6th Cir. 1995) (disclosure of rape victim's medical records to an inmate did not violate her constitutional privacy rights); *DeSanti*, 653 F.2d at 1091 (constitutional rights not violated by dissemination of juvenile delinquents' social histories to various state agencies). Indeed, the court "has recognized a constitutionally-protected informational-privacy interest in only two circumstances: (1) where the release of personal information may lead to bodily harm, and (2) where the released information relates to matters 'of a sexual, personal, and humiliating nature.'" *Wurzelbacher*, 675 F.3d at 586 (quoting *Lambert*, 517 F.3d at 440).

Plaintiff does not allege that the disclosure of his medical information put him at risk of bodily harm, or involved information of a sexual, personal, and humiliating nature. Moreover, none of Plaintiff's allegations meaningfully distinguish his case from *Lee*, *Summe*, *Coleman*, or *Jarvis*, in which the Sixth Circuit held that the disclosure of medical information did not violate the plaintiff's constitutional right to privacy. *See Lee*, 636 F.3d at 261 ("[W]e have not yet confronted circumstances involving the disclosure of medical records that, in our view, are tantamount to the breach of a 'fundamental liberty interest' under the Constitution."). In short, Plaintiff fails to state a constitutional claim with respect to the disclosure of his medical records.

### B. Right to File Grievances

Plaintiff also claims that Defendants' failure to process or respond to his prison grievances violated his right under the First Amendment to file prisoner grievances. Prisoners have a First Amendment right to file nonfrivolous institutional grievances without being subject to retaliation. *Herron v. Harrison*, 203 F.3d 410, 414 (6th Cir. 2000); *Thaddeus-X v. Blatter*, 175 F.3d 378 (6th Cir.1999). Plaintiff, however, does not contend that Defendants retaliated against him for filing grievances. Instead, he claims that Defendants would not acknowledge or respond to them.

The Sixth Circuit has never held that prisoners have a constitutional right to receive a response to their grievances. To the contrary, the Sixth Circuit and other circuit courts have held that there is no constitutionally protected right to an effective prison grievance process. *Walker v. Mich. Dep't of Corr.,* 128 F. App'x 441, 445 (6th Cir. 2005); *Argue v. Hofmeyer*, 80 F. App'x 427, 430 (6th Cir. 2003) ("[T]here is no inherent constitutional right to an effective prison grievance procedure."); *Young v. Gundy,* 30 F. App'x 568, 569-70 (6th Cir. 2002); *Carpenter v. Wilkinson,* No. 99-3562, 2000 WL 190054, at *2 (6th Cir. Feb. 7, 2000); *see also Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996); *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994). Also, Michigan law does not create a liberty interest in the grievance procedure. *See Olim v. Wakinekona,* 461 U.S. 238, 249 (1983); *Keenan v. Marker*, 23 F. App'x 405, 407 (6th Cir. 2001); *Wynn v. Wolf*, No. 93-2411, 1994 WL 105907, at *1 (6th Cir. Mar. 28, 1994). Consequently, Defendants' failure to process or respond to Plaintiff's grievances did not deprive him of a constitutionally protected interest.

In addition, even if Defendants improperly prevented Plaintiff from pursuing a grievance through the grievance appeal process, Plaintiff's constitutional right of access to the courts cannot be compromised by his inability to exhaust the prison grievance process. *See, e.g.*, *Lewis v. Casey*, 518 U.S. 343, 355 (1996) (requiring actual injury); *Bounds v. Smith*, 430 U.S. 817, 821-24 (1977). The exhaustion requirement in the PLRA only mandates exhaustion of available administrative remedies. *See* 42 U.S.C. § 1997e(a). If Plaintiff was improperly denied access to the grievance process, the process would be rendered unavailable, and exhaustion would not be a prerequisite for initiation of a civil rights action.

In light of the foregoing, the Court finds that Plaintiff fails to state a cognizable claim with respect to Defendants' failure to process or respond to his grievances. *Cf. Shehee v. Luttrell*,

199 F.3d 295, 300 (6th Cir. 1999) (a failure to act in response to a prison grievance is not sufficient to give rise to liability under § 1983).

### C. State Law / MDOC Policies

Plaintiff asserts in his complaint that certain conduct by Defendants violated their duties under state administrative rules and/or MDOC policies. A failure to comply with an administrative rule or policy does not itself rise to the level of a constitutional violation. *Laney v. Farley*, 501 F.3d 577, 581 n.2 (6th Cir. 2007); *Smith v. Freland*, 954 F.2d 343, 347-48 (6th Cir. 1992); *Barber v. City of Salem*, 953 F.2d 232, 240 (6th Cir. 1992); *McVeigh v. Bartlett*, No. 94-23347, 1995 WL 236687, at *1 (6th Cir. Apr. 21, 1995) (failure to follow policy directive does not rise to the level of a constitutional violation because policy directive does not create a protectable liberty interest). Section 1983 is addressed to remedying violations of federal law, not state law. *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 924 (1982); *Laney*, 501 F.3d at 580-81. Plaintiff's assertion that Defendants violated state administrative rules or policies is not sufficient to state a cognizable § 1983 claim.

### D. Supervisory Liability

Plaintiff's only allegation against Defendants Caruso, Smith, and Groves are that they failed to respond to Plaintiff's complaints regarding conduct by other MDOC employees. Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 556 U.S. at 676; *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691(1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates are not enough, nor can supervisory liability be based upon

the mere failure to act. *Grinter*, 532 F.3d at 575; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). Moreover, § 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance. *See Shehee*, 199 F.3d at 300. "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. Thus, even if Plaintiff had stated a viable constitutional claim against one of the other Defendants, Defendants Caruso, Smith and Groves are subject to dismissal because Plaintiff has failed to allege that they engaged in any active unconstitutional behavior.

## **Conclusion**

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiff's action will be dismissed for failure to state a claim and/or on grounds of immunity, pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c).

The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). For the same reasons that the Court dismisses the action, the Court discerns no good-faith basis for an appeal. Should Plaintiff appeal this decision, the Court will assess the $455.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless Plaintiff is barred from proceeding *in forma pauperis*, e.g., by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $455.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A Judgment consistent with this Opinion will be entered.


Dated: September 20, 2013                 /s/ Gordon J. Quist
                                                           GORDON J. QUIST
                                                UNITED STATES DISTRICT JUDGE